**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 5 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

FRAN ROBBINS,

       Plaintiff-Appellant,

vs.

JEFFERSON COUNTY SCHOOL
DISTRICT R-1, WAYNE CARLE,
HOWARD CORNELL, SCOTT
WELLS, JOHN DUNAWAY,

       Defendants-Appellees.

No. 98-1226

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 96-D-2958)**

---

Daniel F. Lynch, Denver, Colorado, for Plaintiff-Appellant.

Christopher M. Leh (Alexander Halpern with him on the briefs), Caplan and
Earnest LLC, Boulder, Colorado, for Defendants-Appellees.

---

Before **ANDERSON**, **TACHA**, and **KELLY**, Circuit Judges.

---

**KELLY**, Circuit Judge.

      Plaintiff-Appellant Fran Robbins appeals from the district court's grant of

summary judgment for Defendant-Appellee Jefferson County School District R-1

on her Title VII retaliatory discharge claim and its award of attorney fees to individual Defendants-Appellees Wayne Carle, Howard Cornell, Scott Wells and John Dunaway pursuant to Colo. Rev. Stat. § 24-10-110(5)(c).  She claims that the district court erred in granting summary judgment because (1) disputed issues of material fact exist regarding whether she behaved in an insubordinate manner or was punished simply for pursuing employment grievances; (2) as a matter of law, Title VII protects her pursuit of grievances if done in good faith; (3) the district court should have considered events prior to March 3, 1994 on a continuing violation theory.  Ms. Robbins also challenges the award of attorney fees to the individual defendants, arguing that a federal district court is not a "court of [the] state" of Colorado under Colo. Rev. Stat. § 24-10-119.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

Background

Defendant Jefferson County School District R-1 ("School District") employed Ms. Robbins as a secretary from 1982 to 1995.  She worked in the Security Division and, in early 1993, reported to Defendant Wells.

In February 1993, Ms. Robbins became upset about the posting of signs in the men's and women's restrooms prohibiting the flushing of tampons.  She specifically objected to the presence of the sign in the men's room and

complained to Mr. Wells about both the sign, which she believed created a hostile work environment, and another employee, Ruann Keith, who had some responsibility for posting it. The sign was removed in May 1993.

In July 1993, Ms. Robbins complained to Defendant Dunaway about her working relationship with Mr. Wells and Ms. Keith. Mr. Dunaway responded by arranging for Ms. Robbins to report directly to Ms. Keith. Ms. Robbins was placed on administrative leave in September 1993 during an investigation of the unauthorized release of Security Division documents. She protested this action.

On October 20, 1993, she filed an EEOC complaint, alleging gender discrimination. She claimed that the administrative leave and an earlier reduction in her secretarial assignments constituted retaliation for her complaint about the tampon sign and further alleged that the sign created an offensive work environment. Ms. Robbins returned to work in January 1994 under a new supervisor, Defendant Cornell, and on March 16, 1994, she voluntarily withdrew her EEOC complaint. See Aplt. App. at 263-64.

In July 1994, she testified adversely to the School District in an arbitration hearing regarding the termination of another School District employee who had filed an EEOC complaint. The following month, Mr. Cornell placed Ms. Keith in charge of the Security Division while he attended a five-day conference. Ms. Robbins wrote a memorandum in which she complained about this temporary

grant of authority to Ms. Keith, and Mr. Cornell responded with a Memorandum of Caution, reprimanding Ms. Robbins for challenging his authority.

Mr. Dunaway referred to the Memorandum of Caution in a written refusal to consider Ms. Robbins' application to become his secretary. Ms. Robbins then filed a union grievance, protesting this adverse employment decision. Don Oatman, who succeeded Defendant Carle as assistant superintendent, denied the grievance.

Ms. Robbins then filed a second complaint with the EEOC on December 28, 1994. She also sent complaint letters to Mr. Oatman, Mr. Cornell, and members of the School District's Board of Education during March and April 1995. In these documents, she explicitly accused various School District officials of bias, untrustworthiness, and retaliatory conduct.

On May 1, 1995, Mr. Dunaway suspended Ms. Robbins for three days without pay, ostensibly for disrupting the operations of the School District. That same month, she applied for a position as secretary to the School District's Employee Assistance Program but was not interviewed, the School District says, because she had lower scores than other applicants. In August 1995, the administrator who replaced Ms. Keith informed Mr. Cornell that Ms. Robbins had called him a "puppet." See id. at 328.

When Mr. Cornell instructed Ms. Robbins to meet with him and a union

representative on August 8, she left work permanently without notifying Mr. Cornell and later characterized her departure as a constructive discharge. Ms. Robbins then filed suit in federal district court, alleging retaliatory discharge by the School District in violation of Title VII, state law tortious interference by the individual defendants, and willful and wanton conduct by the individual defendants, warranting exemplary damages under Colo. Rev. Stat. § 13-21-102.

The district court granted summary judgment for the School District and the individual defendants on all claims – holding, inter alia, that (1) because Ms. Robbins voluntarily withdrew her first EEOC complaint, she had not exhausted her administrative remedies for claims arising more than three-hundred days prior to the filing of her second EEOC complaint; and (2) Ms. Robbins could not prevail on her Title VII retaliation claim because she failed to show that the nondiscriminatory rationale articulated by the School District was a pretext. The court also ordered Ms. Robbins to pay the individual defendants' attorney fees on the grounds that she was not substantially successful on her exemplary damages claim. See Colo. Rev. Stat. § 24-10-110(5)(c).

Ms. Robbins appeals the grant of summary judgment for the School District on her Title VII claim and the attorney fee ruling. Aside from her contention that the court erred in ordering her to pay attorney fees under Colo. Rev. Stat. § 24-10-110(5)(c), she does not challenge the disposition of her state law claims.

## Discussion

### A. Title VII Claim

The district court correctly held that, because Ms. Robbins abandoned her first EEOC complaint, she failed to exhaust her administrative remedies as to events that took place more than three-hundred days before the filing of her second EEOC complaint, and thus the court lacked jurisdiction to consider them. See Jones v. Runyon, 91 F.3d 1398, 1401 (10th Cir. 1996); 42 U.S.C. § 2000e(5)(e)(1) (permitting a claimant to seek redress for adverse actions occurring no more than three-hundred days before the filing of an EEOC complaint). The district court only included events on or after March 3, 1994 – three-hundred days prior to the second EEOC complaint – in its analysis.

According to Ms. Robbins, the court erred in applying the three-hundred-day rule because the School District's conduct prior to March 3, 1994 represented part of a continuing violation or, alternatively, because her case comes under the doctrine of equitable tolling. The district court correctly rejected both of these arguments.

The continuing violation doctrine allows a Title VII plaintiff to challenge conduct that occurred outside the statutory time period if such conduct was "sufficiently related and thereby constitute[d] a continuing pattern of

discrimination." Baty v. Willamette Indus., Inc., 172 F.3d 1232, 1248 n.8 (10th Cir. 1999) (quoting Hunt v. Bennett, 17 F.3d 1263, 1266 (10th Cir. 1994)). "Mere continuity of employment, without more, is insufficient . . . ." Delaware State College v. Ricks, 449 U.S. 250, 257 (1980). Although the act occurring within the statutory period need not violate Title VII when viewed alone, the plaintiff cannot merely allege the continuing effects of prior acts; rather, she must show that events inside and outside the statutory period share commonality and are related acts of discrimination. See Mascheroni v. Board of Regents of the Univ. of California, 28 F.3d 1554, 1561-62 (10th Cir. 1994). In determining whether a plaintiff has made such a showing, we consider: "(i) subject matter – whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence – whether the nature of the violations should trigger an employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate." Baty, 172 F.3d at 1248 n.8 (quoting Martin v. Nannie & the Newborns, Inc., 3 F.3d 1410, 1415 (10th Cir. 1993)).

We look for the third factor, permanence, because the continuing violation doctrine "is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that . . . her rights have been violated." Id. (quoting Martin, 3 F.3d at 1415 n.6 ). Ms. Robbins clearly

felt a need to assert her rights regarding events prior to March 3, 1994, but she knowingly waived these rights by withdrawing her EEOC complaint. Since she failed to satisfy the permanence requirement, she has not shown the existence of a continuing violation.

We also decline to apply equitable tolling. Title VII time limits will be equitably tolled "only if there has been active deception of the claimant regarding procedural prerequisites" to bringing her case. Mascheroni, 28 F.3d at 1562 (internal quotation marks omitted). Ms. Robbins has made no showing regarding such deception; rather, as noted above, she demonstrated awareness of her obligation "to file promptly or forfeit her claim." Id. Thus, in reviewing the grant of summary judgment, we must exclude events prior to March 3, 1994 from our analysis.

We review a grant of summary judgment de novo applying the same standard as the district court and considering the record in the light most favorable to the nonmovant. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). A Title VII plaintiff alleging retaliatory discharge must make a prima facie case by showing that "1) she engaged in protected opposition to discrimination or participation in a proceeding arising out of discrimination; 2) adverse action by the employer subsequent to the protected activity; and 3) a

causal connection between the employee's activity and the adverse action." Archuleta v. Colorado Dep't of Inst., Div. of Youth Serv., 936 F.2d 483, 486 (10th Cir. 1991).

According to the School District, Ms. Robbins failed to establish a prima facie case because her behavior did not constitute protected opposition to its policies. However, Title VII extends protection to "those . . . who informally voice complaints to their superiors or who use their employers' internal grievance procedures." Rollins v. State of Florida Dep't of Law Enforcement, 868 F.2d 397, 400 (11th Cir. 1989). Furthermore, a plaintiff does not have to prove the validity of the grievance she was allegedly punished for lodging; "opposition activity is protected when it is based on a mistaken good faith belief that Title VII has been violated." Love v. Re/Max of America, Inc., 738 F.2d 383, 385 (10th Cir. 1984); see Zinn v. McKune, 143 F.3d 1353, 1362 (10th Cir. 1998).

Although Ms. Robbins asserts that the School District retaliated against her for participating in an arbitration hearing, she does not point to any document proving that her testimony concerned discrimination. See 42 U.S.C. 2000e-3(a). Consequently, she has failed to show that her testimony warrants "the exceptionally broad protection" reserved for participation in Title VII proceedings. See Glover v. South Carolina Law Enforcement Div., 170 F.3d 411, 414 (4th Cir. 1999) (quoting Pettway V. American Cast Iron Pipe Co., 411 F.2d

998, 1006 n.18 (5th Cir. 1969)).

The School District concedes, however, that Ms. Robbins "may rely on 'participation activity' based on her filing of charges with the EEOC." Aple. Br. at 27. The first allegedly retaliatory act within the statutory time period was Mr. Cornell's temporary delegation of authority to Ms. Keith. This occurred in August 1994, about nine months after Ms. Robbins filed her first EEOC complaint, and was both too loosely connected in substance and too far removed in time from the first complaint to provide the requisite nexus for a prima facie case. See Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1395 (10th Cir. 1997) (holding that, absent additional evidence, four-month gap between protected activity and alleged retaliation was insufficient for prima facie case). Ms. Robbins also offers minimal evidence of a causal relationship between her second EEOC complaint, filed on December 28, 1994, and adverse treatment in the spring and summer of 1995. However, she does point to acts specifically directed at her, based on the School District's perception of her as a troublemaker. Thus, we will assume but not hold that she has made a prima facie case of retaliation for her filing of the second EEOC complaint.

Once a plaintiff establishes a prima facie case, the employer must offer a facially legitimate, nondiscriminatory rationale for the adverse employment action. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973).

The School District contends that its discipline of Ms. Robbins represented "a measured response to a contentious, disruptive, and increasingly abusive employee." Aple. Br. at 29. Ms. Robbins then has the burden "to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual – i.e. unworthy of belief." Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995). This she has failed to do.

We recognize that an employee's behavior may warrant Title VII protection when it can be considered intemperate or even disloyal. See Jennings v. Tinley Park Community Consol. Sch. Dist., 796 F.2d 962, 968 (7th Cir. 1986); EEOC v. Crown Zellerback Corp., 720 F.2d 1008, 1014 (9th Cir. 1983) (noting that "[a]lmost every form of opposition to an unlawful employment practice is in some sense disloyal to the employer, since it entails a disagreement with the employer's views and . . . policies") (internal quotation marks omitted). However, like the Eleventh Circuit in Rollins, 868 F.2d at 399, we are faced with a case involving an unusually combative employee.

As the School District notes, several circuits have held that "otherwise protected conduct may be so disruptive or inappropriate as to fall outside the statute's protection." Id. at 401; see Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 259-60 (4th Cir. 1998). Whether the manner of pursuing a grievance, as opposed to the grievance itself, must be reasonable is an issue of

first impression in the Tenth Circuit. To determine the reasonableness of an employee's opposition, other courts have weighed "the need to protect individuals asserting their rights [under Title VII] against an employer's legitimate demands for loyalty, cooperation and a generally productive work environment." Rollins, 868 F.2d at 401; see also, e.g., Laughlin, 149 F.3d at 259.

Like the Rollins plaintiff, whose conduct lay outside Title VII protection, Ms. Robbins lodged frequent, voluminous, and sometimes specious complaints and engaged in antagonistic behavior toward her superiors. See Rollins, 868 F.2d at 399. The record reveals that, during the relevant time period, she (1) challenged Assistant Superintendent Oatman's decision to deny her union grievance, see Aplt. App. at 278-80; (2) accused Mr. Cornell of slander, malicious intent, and untruthfulness, see id. at 267, 301-02; (3) questioned Mr. Cornell's temporary delegation of authority to Ms. Keith, see id. at 224-25; (4) complained that Assistant Superintendent Schwartzkopf's response to her grievances "contain[ed] false statements, and drip[ped] with hostility and bias," id. at 293; (5) called Mr. Schallmoser a "puppet," id. at 140; and (6) accused the School District and specific individuals of intending to "cover up for . . . inappropriate actions taken by Risk Management administrators." Id. at 292; see also id. at 293, 299-300.

Balancing the purpose of Title VII against the barrage of inflammatory

memoranda Ms. Robbins wrote, often bypassing her immediate superiors to complain to the assistant superintendent and even school board members, we hold that, as a matter of law, these activities were not reasonable and did not constitute protected opposition. See Rollins, 868 F.2d at 401. The School District argues that it disciplined Ms. Robbins for making inflammatory, insubordinate comments and disregarding the chain of command. Ms. Robbins has not presented a sufficient basis for a jury to find this stated reason unworthy of belief. See Randle, 69 F. 3d at 451. Thus, we affirm the grant of summary judgment for the School District on her Title VII claim. In so doing, we note that evidence of personality conflicts in the workplace, while regrettable, does not constitute proof of a Title VII violation. See Aramburu v. Boeing Co., 112 F.3d 1398, 1406 (10th Cir. 1997).

## B. Attorney Fees

The district court ordered Ms. Robbins and her counsel to pay the individual defendants' attorney fees under Colo. Rev. Stat.§ 24-10-110(5)(c), which provides in pertinent part:

> In any action against a public employee in which exemplary damages are sought based on allegations that an act or omission of a public employee was willful and wanton, if the plaintiff does not substantially prevail on his claim . . . , the court shall award attorney fees against the plaintiff or the plaintiff's attorney or both

and in favor of the public employee.

According to Ms. Robbins, however, a federal court cannot award attorney fees against her under § 24-10-110(5)(c) because it is not "a court of this state" within the meaning of Colo. Rev. Stat. § 24-10-119, which states:

> The provisions of this article shall apply to any action against a public entity or a public employee in *any court of this state* having jurisdiction over any claim brought pursuant to any *federal law*, if such action lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant.

Id. (emphasis added). Citing <u>Griess v. Colorado</u>, 841 F.2d 1042 (10th Cir. 1988), and several district court cases purporting to follow it, <u>see</u> <u>Sanchez v. Board of County Comm'rs of El Paso County</u>, 948 F. Supp. 950 (D. Colo. 1996) and <u>Goodwin v. Debekker</u>, 807 F. Supp. 101 (D. Colo. 1992), she argues that we must find § 24-10-110(5)(c) inapplicable to her case. We disagree.

We first note that § 24-10-119 simply makes clear that the Colorado Governmental Immunity Act ("CGIA"), Colo. Rev. Stat. § 24-10-101 to § 24-10-120, waiving immunity and imposing various conditions, also applies to federal claims brought in state courts. Ms. Robbins brought *all* of her claims against the individual defendants under *state* law in this case. In <u>Griess</u>, we only held that, by enacting the CGIA, the state of Colorado had not waived its Eleventh Amendment immunity to federal claims brought in federal court. We used § 24-

10-119 to illustrate this point.  See Griess, 841 F.2d at 1044-45.  However, nothing in Griess or § 24-10-119 indicates that a federal court cannot apply the attorney fee provision, § 24-10-110(5)(c), to state claims over which it exercises supplemental jurisdiction.

Indeed, such a construction would violate the Supremacy Clause of the Constitution and the doctrine of supplemental jurisdiction.  See U.S. Const. arts. III & VI; 28 U.S.C. § 1367; Lytle v. City of Haysville, Kansas, 138 F.3d 857, 868 (10th Cir. 1998) ("When exercising jurisdiction over pendent state claims, we must apply the substantive law of the forum state and reach the same decision we believe the state's highest court would, just as we would if our jurisdiction rested on diversity of citizenship."); Wojciechowski v. Harriman, 607 F. Supp. 631, 633 (D.N.M. 1985) (holding that New Mexico statute purporting to confine exclusive original jurisdiction over suits under New Mexico Tort Claims Act to state district courts violated the Constitution).  Tenth Circuit case law acknowledges that federal courts may apply the CGIA to state claims not barred by the Eleventh Amendment.  See, e.g., Beard v. City of Northglenn, Colorado, 24 F.3d 110, 118 (10th Cir. 1994) (plaintiff's diversity-based state tort claim for malicious prosecution against arresting officers was barred by CGIA because he had not shown recklessness on officers' part).  To the extent that Goodwin, 807 F. Supp. at 102, and Sanchez, 948 F. Supp. at 955, suggest otherwise, they are in error and

must be disregarded.

We also note that Goodwin and Sanchez involved different facts than Ms. Robbins' case. In Goodwin, 807 F. Supp. at 102, the plaintiff was not obligated to pay attorney fees under § 24-10-110(5) for failing to substantially prevail on his federal § 1983 claims. We can easily distinguish Goodwin from Ms. Robbins' case, in which the only prayer for exemplary damages was made under Colo. Rev. Stat. § 13-21-102. Sanchez is also distinguishable because, in that case, the primary claims against the employer arose under Title VII, and there were no individual defendants. See Sanchez, 948 F. Supp. at 955. In contrast, Ms. Robbins cannot sue the School District employees under Title VII, nor has she sued them under another federal statute. Therefore, we do not consider her state tortious interference and exemplary damages claims against the individual defendants to be "peripheral." Id.

We reject Ms. Robbins' interpretation of § 24-10-119 and find the cases she cites erroneous, to the extent that they misinterpret our holding in Griess, and factually inapposite. Thus, the district court did not err in awarding attorney fees under § 24-10-110(5)(c) due to her failure to substantially prevail on her state exemplary damages claim.

AFFIRMED.