**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 5 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MARY WILEY,

      Plaintiff - Appellant,

v.

OHIO/OKLAHOMA HEARST-
ARGYLE TELEVISION, INC., doing
business as KOCO-TV, a Nevada
corporation,

      Defendant - Appellee,

and

AMERICAN RED CROSS,

      Defendant.

No. 01-6062
(D.C. No. 99-CV-1644-ML)
(W.D. Oklahoma)

**ORDER AND JUDGMENT** *

Before **TACHA** , Chief Judge, **SEYMOUR** , Circuit Judge, and **BRORBY** , Senior
Circuit Judge.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

In this diversity case, plaintiff Mary Wiley appeals the district court's grant of summary judgment in favor of defendant Ohio/Oklahoma Hearst-Argyle Television, Inc. on her defamation claim. Because plaintiff failed to raise a genuine issue of fact as to whether defendant breached its duty of care, we affirm.

After tornadoes ripped through central Oklahoma on May 3, 1999, the American Red Cross and other agencies immediately set up relief centers, including two in Del City, Oklahoma. On May 4, plaintiff volunteered to work at the Del City High School relief center. According to police reports, she was asked to leave after witnesses saw her taking donated items without permission.

On May 5, plaintiff went to a second relief shelter where she told witnesses that she had donations which she would deliver to the back of the shelter. According to police reports, however, when plaintiff drove her car to the back of the shelter, she informed volunteers that she had received permission from someone up front to take relief supplies for her family. Red Cross volunteers helped plaintiff gather food, clothing, boots, and bedding, which they loaded into her car. When the assistant manager observed this, she had a security guard take

down plaintiff's license plate as she drove off, and police were notified. The Oklahoma Attorney General's fraud control unit subsequently notified guards to be on the lookout for plaintiff, who was accused of taking items from the relief center without permission. When plaintiff returned to the relief shelter the next afternoon, she was approached by a security guard, who requested her identification and then notified the police. The police gave plaintiff Miranda warnings, questioned her, took her photograph, seized her Red Cross name tag, and released her.

Over the next few days, police and/or the Attorney General's fraud unit took statements from Red Cross volunteers and employees, and Police Detective Magni prepared a file for presentation to the district attorney's office. The detective also prepared a report for the district attorney's office which listed under the category of "charges" that plaintiff was accused of obtaining property by false pretenses in violation of Okla. Stat. tit. 5, § 21-1542. *See* Aplee. App. at 161.

On May 12, Randy McIlwain, a reporter from defendant's Oklahoma City television station, KOCO-TV, spoke with Detective Magni about plaintiff's case and reviewed the case file. He reported the information to KOCO-TV's producer, who drafted several news scripts. That evening, the station broadcast a trailer which stated "Another possible scam after the storm. Tonight a metro woman is

accused of being a relief thief. Pretending to be a Red Cross volunteer, while taking off with donations for tornado victims. It's a story you'll see only on Five." Aplt. App., Ex. D. Later that night, the station displayed a picture of plaintiff with the word "THIEF" across the top, and reported the following:

> Charges are pending tonight against 69 year old Mary Wiley of Oklahoma City. The theft happened at this temporary Red Cross shelter in Del City. Police say Wiley took a load of items intended for tornado victims. She was wearing a Red Cross name tag. The District Attorney has accepted the police report and plans to file charges.

*Id.* Substantially the same information was reported the next morning, although that report also included an incorrect statement that police were looking for plaintiff. *See id.* at Ex. E. Plaintiff was never formally charged by the District Attorney.

Plaintiff filed suit in state court against the American Red Cross and defendant. After removal to federal court, plaintiff dismissed her claims against the American Red Cross, and filed an amended complaint against defendant, alleging defamation. Defendant's disclosed witnesses included a journalism professor who intended to testify that the television station complied with the standard of care ordinarily exercised by members of the news media. In contrast, plaintiff's disclosure failed to identify any witness who would testify regarding the standard of care. Defendant filed for summary judgment asserting the evidence was undisputed that it exercised due care, and that plaintiff could not

show a breach of care. The district court granted summary judgment, and plaintiff appeals.

We review a grant of summary judgment de novo, applying the same standards as those applied by the district court. *Robbins v. Jefferson County Sch. Dist. R-1* , 186 F.3d 1253, 1258 (10th Cir. 1999) . Summary judgment is appropriate when a record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Plaintiff argues that the district court erred in granting summary judgment because defendant's negligence could be determined by a layperson and did not require testimony from an expert. Her entire argument in this regard is that "[i]f a news station broadcasts falsehoods or lies that are not based on the information gathered, an ordinary layman can make that determination." Aplt. Br. at 12. No cases are cited to support her position.

Plaintiff's argument has several flaws. First, she relies completely on proffered supplemental material which we decline to consider for the first time on appeal.[1] Second, despite the Oklahoma Supreme Court's holding that media

---

[1] Plaintiff has moved to supplement the record with excerpts of deposition testimony by Del City Police Detective Magni and reporter McIlwain which were not before the district court. We deny this motion. When reviewing a grant of summary judgment, we consider only the record that was before the district court

(continued...)

negligence is to be determined under a professional negligence standard which should ordinarily be proven by an expert, *see Malson v. Palmer Broadcasting Group*, 936 P.2d 940, 942 (Okla. 1997), plaintiff failed to present *any* evidence to the district court regarding the standard of care. In the face of defendant's affidavit evidence that it complied with the standard of care, plaintiff could not simply rest on her argument that the broadcast of incorrect information inherently demonstrates negligence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (when moving party submits properly supported summary judgment motion, nonmoving party must produce affirmative evidence to demonstrate genuine issue of fact, and may not rely simply on denials or allegations in pleadings).

We **AFFIRM** the judgment of the district court.

Entered for the Court

Stephanie K. Seymour
Circuit Judge

---

[1](...continued)
when the decision was made. *John Hancock Mut. Life Ins. Co. v. Weisman*, 27 F.3d 500, 506 (10th Cir. 1994). Although plaintiff argues we should consider the new testimony because the depositions were taken after defendant's summary judgment motion was filed, she has not shown why the depositions were not taken earlier, or why, after learning of the testimony, she did not immediately supplement her pending summary judgment response with a motion and affidavit pursuant to Fed. R. Civ. P. 56(f).